**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

GUILLERMO MELENDEZ PAZ,

      Petitioner,

      v.

MARKWAYNE MULLIN, *et al.*,

      Respondents.

Case No. 2:26-cv-00296-RFB-MDC

**ORDER GRANTING WRIT OF HABEAS CORPUS**

Before the Court is Petitioner Guillermo Melendez Paz's First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. See generally First Amended Petition, ECF No. 11 [hereinafter, "Petition"]. Also pending is Petitioner's Motion for Temporary Restraining Order ("TRO"), which asks the Court to order his immediate release in light of the length of his detention since October 9, 2025, and the fact that his partner is pregnant and due to give birth on May 25, 2026. See ECF No. 16. Federal Respondents have filed no response to the Motion for TRO. See ECF No. 19. For the following reasons, the Court grants the Petition and orders Petitioner's immediate release from detention and denies the Motion for TRO as moot.

Petitioner challenges the lawfulness of his ongoing detention at Nevada Southern Detention Center ("NSDC") in the custody of Immigration and Customs Enforcement ("ICE"). Specifically, Federal Respondents are detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A), a provision of the Immigration and Nationality Act ("INA") which generally[1] mandates detention without the possibility of release on bond or parole during the pendency of a noncitizen's removal proceedings.

---

[1] Noncitizens detained under § 1225(b) "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" at the arresting ICE officer's discretion. Jacobo-Ramirez v. Mullin, No. 2:25-CV-02136-RFB-MDC, 2026 WL 879799, at *8 (D. Nev. Mar. 30, 2026) (citing Jennings v. Rodriguez, 583 U.S. 281, 288 (2018) (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5)).

See United States' Response to Petitioner's First Amended Petition, ECF No. 13 at 2 [hereinafter, "Response"].[2] Petitioner asserts that his detention pursuant to § 1225(b)(2)(A) violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment, because he is properly detained pursuant to § 1226(a), and his arrest and detention without the procedural protections guaranteed by § 1226(a) and its implementing regulations is unconstitutional. See Petition at 6–8. He further asserts that to the extent he is subject to mandatory detention pursuant 8 U.S.C. § 1226(c), that provision is unconstitutional as applied to him. See id. at 8–17.

Federal Respondents (also referred to herein as "the government") invoke their novel statutory interpretation of § 1225(b)(2)(A) as the sole authority for Petitioner's detention. See generally Response. They do not assert any individualized justification for his ongoing detention. See id. This Court is well acquainted with the government's interpretation of § 1225(b)(2)(A), which it has repeatedly rejected as unlawful. See, e.g., Jacobo-Ramirez v. Mullin, No. 2:25-cv-02136-RFB-MDC, 2026 WL 879799, at *34–35 (D. Nev. Mar. 30, 2026) (collecting cases). In fact, on March 30, 2026, the Court issued a classwide judgment declaring Federal Respondents' interpretation of § 1225(b)(2)(A)—and the Executive Branch's mass immigration detention policies that arise from that interpretation—unlawful, because undocumented noncitizens like Petitioner, who are arrested by ICE officers in the interior of the country and alleged to have entered without inspection or parole, are subject to detention under 8 U.S.C. § 1226(a) and its implementing regulations 8 C.F.R. §§ 236.1, 1236.1, and 1003.19. See id. at 33. The Court further vacated the government's recently adopted § 1225(b)(2)(A) policies, which were encapsulated in an internal ICE Memo and the Board of Immigration Appeals (BIA) decision in Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025), pursuant to § 706(2)(A) of the Administrative

---

[2] Respondents incorporate by reference their brief in Jacobo Ramirez v. Noem, Case No. 2:25-cv-02136-RFB-MDC (D. Nev. Oct. 30, 2025) but failed to attach the document to their response. Neither Petitioner nor his counsel was a party to the Jacobo Ramirez action and therefore lacks access to that document. Petitioner requests that the Court treat this omission as a waiver of the arguments contained therein, as it constitutes a violation of LR 10-3(a). However, because Petitioner was able to independently obtain the government's response, and because the Court rejects the government's arguments on the merits, the Court declines to find waiver and instead admonishes the government to comply with local rules going forward.

Procedures Act. See id.

As discussed below, the Court finds that Petitioner is a member of the Jacobo-Ramirez Class. Therefore, his ongoing detention under § 1225(b)(2)(A) is unlawful and violates this Court's declaratory judgment and vacatur. Further, the Court finds Petitioner's arrest and ongoing detention without the procedural protections he is entitled to under § 1226(a) and its implementing regulations violates his due process rights, and that the only appropriate remedy is his immediate release from custody.

## I.   CLASS MEMBERSHIP

From the outset, the Court finds that Petitioner is a member of the Jacobo-Ramirez Class, which is defined as:

> All noncitizens in the U.S. without lawful status (1) who are or will be arrested or detained by ICE; (2) who are or will be in removal proceedings before an Immigration Court within the District Nevada; (3) whom DHS alleges or will allege to have entered the United States without inspection or parole; (4) who are not or will not be subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time they are scheduled for or request a bond hearing; and (5) whose most recent arrest by ICE occurred inside the United States and not while arriving in the United States.

Id. at *4 (citation omitted) [hereinafter "Class Members"].

Based on the Parties' undisputed factual allegations, and the evidence they supply, the Court finds Petitioner satisfies these criteria. See Carlson v. Landon, 186 F.2d 183, 188 (9th Cir. 1950) (describing the factfinding process in habeas corpus proceedings).

First, Petitioner is an undocumented noncitizen who is actively being detained by ICE. See Petition at 3, ECF No. 11; Response at 2, ECF No. 13. Second, he is in removal proceedings before the Las Vegas Immigration Court, which is within the District of Nevada.[3] See Response, Ex. C

---

[3] Although Petitioner was ordered removed by the Salt Lake City Immigration Court on June 24, 2025, see Response, Ex. B (Order of the Immigration Judge), ECF No. 13-2, Petitioner has a pending appeal of that decision which was received by the BIA on July 22, 2025. See Executive Office for Immigration Review (EOIR), Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last visited April 27, 2026). As such, Petitioner is still in removal proceedings for purposes of 8 U.S.C. § 1226. See Prieto-Romero v. Clark, 534 F.3d 1053, 1059 (9th Cir. 2008). Further, Petitioner was denied release on bond by an immigration judge of the Las Vegas Immigration Court on December 2, 2026. See Petition, Ex. 1, ECF No. 11-2.

at 2–3 (Immigration Judge Bond Memorandum), ECF No. 13. Third, DHS alleges that Petitioner entered the United States without inspection, admission, or parole. See Response, Ex. A at 3 (DHS Form I-213 Record of Inadmissible Noncitizen), ECF No. 13-1; Ex. B at 2, ECF No. 13-2 (Order of the Immigration Judge) (finding Petitioner inadmissible pursuant to 8 U.S.C. § 1182(6)(A) for "being present without inspection or parole").

Third, Federal Respondents are detaining Petitioner pursuant to § 1225(b)(2)(A) and they do not assert that Petitioner is subject to detention under §§ 1226(c), 1225(b)(1), or 1231. See generally, Response, ECF No. 13. In addition to his challenge to the lawfulness of his detention pursuant to § 1225(b)(2)(A), Petitioner challenges his detention pursuant to § 1226(c)(1)(A) because an immigration judge denied him bond due to lack of jurisdiction under Matter of Yajure Hurtado and because of "a controlled substance conviction." See Petition, Ex. 1 at 2, ECF No. 11-2. The immigration judge's ("IJ") decision appears to reference § 1226(c)(1)(A), which requires detention without release on bond or parole for noncitizens who are inadmissible due to a controlled substance offense under 8 U.S.C. § 1182(a)(2). See 8 U.S.C. § 1226(c)(1)(A). However, DHS does not allege that Petitioner is inadmissible under 8 U.S.C. § 1182(a)(2); rather the only charge of inadmissibility underlying Petitioner's removal proceedings is pursuant to 8 U.S.C. § 1182(6)(A). See Response, Ex. B (Order of the Immigration Judge), ECF No. 13-2.

To the extent Petitioner *could be* subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(A), even where DHS has not alleged that Petitioner is inadmissible pursuant to 8 U.S.C. § 1182(a)(2), the Court finds Federal Respondents have not provided a sufficient record on this issue and have waived that argument. See, e.g., United States v. Orozco, F.3d 1204, 1210 (9th Cir. 2017) (explaining that the court need not address an argument "because the U.S. Attorney waived this argument by failing to address it in his answering brief"); See United States v. Dreyer, 804 F.3d 1266, 1277 (9th Cir. 2015) (*en banc*); see also, Rodriguez v. Mullin, No. 2:26-CV-00531-APG-NJK, 2026 WL 895685, at *4 (D. Nev. Apr. 1, 2026) (finding the government waived a defense to a habeas petitioner's as applied constitutional challenge to his detention under § 1226(c), and that his detention under that provision would violate his due process rights). Accordingly, the Court finds § 1226(c)(1)(A) does not apply to Petitioner, and Federal

Respondents have waived their defense to Petitioner's as applied due process challenge to his mandatory detention under that provision.

Fifth, Petitioner was most recently arrested well within the country's interior, not while he was arriving in the United States. See Petition at 4, ECF No. 11; Response at 2–3, ECF No. 13.

In sum, Petitioner is clearly a Jacobo-Ramirez Class Member, and he is entitled to the relief afforded to the Class by this Court. Cf. Navarro v. Mukasey, 518 F.3d 729, 737 (9th Cir. 2008) ("They are, accordingly, class members eligible for relief."). Therefore, the Court finds Petitioner's ongoing detention is unlawful under the INA, as his detention is governed by § 1226(a) and its implementing regulations, and the government is improperly subjecting him to mandatory detention under § 1225(b)(2)(A) in violation of this Court's declaratory judgment and vacatur. See Jacobo-Ramirez, 2026 WL 879799, at *33–34.

## II.     DUE PROCESS

The Court has previously clarified that similarly situated noncitizens in Petitioner's position are entitled to due process under the Constitution. See, e.g., Escobar Salgado v. Mattos, 809 F. Supp. 3d. 1123, 1158–60 (D. Nev. 2025); Jacobo-Ramirez v. Noem, --- F. Supp. 3d. ---, 2025 WL 3270137, at *8–9 (D. Nev. Nov. 24, 2025). The Court incorporates these holdings, and their underlying reasoning, in this case. The Court reiterates this country's longstanding, fundamental guarantee that noncitizens "who have once passed through our gates, *even illegally*, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law." Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 212 (1953). Noncitizens like Petitioner who have entered our country are entitled to due process "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690.

Section 1226(a) and its regulations guarantee noncitizens detained under that provision multiple levels of "substantial procedural protections" against the arbitrary deprivation of their liberty. See Jacobo-Ramirez, 2026 WL 879799, at *6 (quoting Rodriguez Diaz v. Garland, 53

F.4th 1189, 1196 (9th Cir. 2022)). These protections include, *inter alia*: the requirement that a noncitizen cannot be detained without notice of the basis for their detention through a notice to appear and administrative warrant, signed and served by designated immigration officers, see id. (citing 8 C.F.R. §§ 236.1; 287.5(d); 287.8(c)(2)(i)-(ii)); the requirement that an ICE officer conducts an initial custody determination at the outset of detention, wherein the noncitizen has an opportunity to "'demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding,'" see id., (citing Rodriguez Diaz, 53 4th at 1196) (citing 8 C.F.R. § 236.1(c)(8)); and the right to seek review of an ICE officer's initial custody determination through a prompt bond hearing before an immigration judge, wherein they can obtain release by demonstrating, at a hearing based on individualized evidence, that they are not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." See id. at 6–7 (citing 8 C.F.R. §§ 236.1(d)(1), 1003.19; Rodriguez Diaz, 53 F.4th at 1196 (citations omitted)).

The government's novel mass detention policies under § 1225(b)(2)(A) require no comparable procedures to ensure its detention authority respects constitutional limits. As a result, noncitizens like Petitioner are indiscriminately arrested by ICE officers in the interior of the country and subjected to prolonged detention without the government considering—let alone substantiating—whether it has a constitutionally recognized interest in their detention. Indeed, ICE's detention policy, as evidenced by the July 8th, 2025 Memo issued by Acting ICE Director Todd Lyons, specifically instructs ICE agents against issuing any "Form I-286, Notice of Custody Determination" to such noncitizens, because individual custody determinations are only required under 8 U.S.C. § 1226 and its implementing regulations. See Jacobo-Ramirez, 2026 WL 879799, at *3 (citing 8 C.F.R. § 236.1(c)(8)). This Court vacated that policy, see id. at *33, yet as Petitioner's circumstances illustrate, the government is still detaining Class Members without any consideration of their dangerousness or risk of flight, despite the fact that it has "no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017).

Considering the above, this Court found the government's expansion of § 1225(b)(2)(A) to apply to millions of undocumented noncitizens living in the United States, many of whom, like Petitioner, are "neighbors, spouses, mothers, fathers, and grandparents of American citizens," id. at *2, raises serious constitutional concerns under the Due Process Clause of the Fifth Amendment. See id. at *26–29 (discussing the due process and Fourth Amendment concerns raised by the government's application of § 1225(b)(2)(A) to Class Members). Those concerns are Petitioner's current reality.

As such, this Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a) not merely by statute and regulation but also by the Due Process Clause, which protects all persons in this country from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Therefore, as more fully discussed below, Federal Respondents' deprivation of Petitioner's liberty without the protections afforded by § 1226(a)—procedures which encompass pre-deprivation notice of the individualized basis for ICE's decision to detain a noncitizen, "subject to numerous levels of review, each offering [the detainee] the opportunity to be heard by a neutral decisionmaker," Rodriguez Diaz v. Garland, 53 F.4th 1189, 1210 (9th Cir. 2022)—violates his procedural due process rights. Likewise, the government's failure to articulate an individualized interest in detaining Petitioner, including in in these habeas proceedings, violates his substantive due process rights. See Zadvydas, 533 U.S. at 690.

### A. Procedural Due Process

To determine what process is due under the Constitution, courts apply the three-part balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976) to analyze and balance both the private and governmental interests affected. See Rodriguez Diaz, 53 F.4th at 1203–1207 (collecting cases and clarifying that the Mathews test is appropriate in the context of immigration detention). Specifically, courts weigh the following factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement[s] would entail."

Mathews, 424 U.S. at 335 (citation omitted).

On balance, these factors weigh heavily in favor of Petitioner. First, Petitioner has a paramount interest in his physical liberty. That interest is especially weighty considering the process he has received, and that was available to him, throughout his months of detention—that is, regarding the government's custody determinations, no process at all. See Rodriguez Diaz, 53 F.th at 1208 (considering the process the immigration detainee had already received during his detention pursuant to § 1226(a) and the further process that was available to him in weighing his private liberty interest).

Second, the risk of an erroneous deprivation of his liberty is extraordinarily high under the government's current procedures (or absence thereof), which do not require any individualized determination that Petitioner's detention is justified. Nor is Petitioner provided with a timely opportunity to challenge the government's basis for his arrest and detention under § 1225(b)(2)(A), as, for example, based on a mistake of fact, in contrast to procedural protections available under other mandatory detention provisions of the INA. See, e.g., Demore v. Kim, 538 U.S. 510, 514 n.3 (describing the availability of a "Joseph hearing" which is "immediately provided to a detainee who claims that he is not covered by § 1226(c)" where "the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that [the agency] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.") (citing 8 C.F.R. § 3.19(h)(2)(ii) (2002); Matter of Joseph, 22 I.&N. Dec. 799 (BIA 1999)).  In contrast longstanding procedures—which the government has only recently abandoned after thirty years of consistent prior practice—would require a determination that detention is justified based on Petitioner's individual circumstances, notice of that determination, and a meaningful opportunity to be heard by a neutral decisionmaker, subject to multiple levels of administrative and judicial review. See Jacobo-Ramirez, 2026 WL 879799, at *29–31; see also Rodriguez Diaz, 53 F.4th at 1210. These alternate procedures greatly reduce the risk of erroneous deprivation.

Third, the government's interest in enforcing immigration law and presumed interest in detaining noncitizens who are dangerous, or a flight risk, is served, and not unduly burdened, by

the longstanding procedural protections provided to noncitizens like Petitioner to ensure they are indeed dangerous or at risk of absconding. See Escobar Salgado, 809 F. Supp. 3d. at 1160–62. Moreover, the additional procedural requirements afforded under § 1226(a) serve to *reduce* the fiscal and administrative burden of *civil* immigration detention. See Jacobo-Ramirez, 2026 WL 879799, at *30 (Recent estimates by the federal government find that supervised release programs such as those available under § 1226 cost less than $4.20 each day per participant, compared with detention costs of $152 per day.") (citation omitted).

### B.  Substantive Due Process

Outside of the criminal context, government detention violates the substantive component of the due process clause "unless the detention is ordered . . . in certain special and narrow nonpunitive circumstances, . . . where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas v. Davis, 533 U.S. 678, 690 (2001) (citations and quotation marks omitted). To date, Federal Respondents have not asserted an individualized justification—let alone a special or compelling justification—for depriving Petitioner of his freedom. Accordingly, the Court further finds that Petitioner's prolonged detention, which has already exceeded six months and is poised to last for an untold period, violates his right to substantive due process. Cf. Escobar Salgado, 809 F. Supp. 3d. at 1162 (elaborating on this same analysis and reaching the same conclusion).

For the foregoing reasons, the Court has little difficulty concluding that Petitioner's detention violates his right to procedural and substantive due process and is, therefore, unconstitutional.

### III.    REMEDY

Based on the record before it, the Court finds that Petitioner has been subjected to arbitrary, erroneous, and prolonged detention in violation of his statutory and constitutional rights, as well as this Court's declaratory judgment and vacatur. The Court's task then is to determine the appropriate remedy for these violations. See Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir. 1994) ("A federal court is vested with the largest power to control and direct the form of judgment to be

entered in cases brought up before it on habeas corpus. The court is free to fashion the remedy as law and justice require[.]") (alterations in original) (citations omitted). For a few reasons, the Court finds that immediate release is the appropriate equitable remedy in this case.

First, Petitioner's prolonged detention is particularly egregious. Since October 9, 2025, for over six months, he has been held without any individualized custody determination. See Petitioner's Motion for Temporary Restraining Order at 1–2, ECF No. 16. This unlawful detention has not only stripped Petitioner of his physical liberty but has also separated him from his partner during a critical point in her pregnancy, leaving him unable to financially and emotionally support her, and raising the very real possibility that he will miss the birth of his child entirely. See id. at 6.  Federal Respondents have filed no opposition to Petitioner's request that he be immediately released for those reasons. See ECF No. 19 (Notice of Respondents' Non-Opposition). In the absence of any of any justification from Respondents to support continued detention, the only remedy in these circumstances is immediate release.

Second, the Court considers Federal Respondents' failures as to due process in this case and their continued enforcement of detention policies that the Court has found, in a binding judgment, to be unlawful. Here, Petitioner requested a bond hearing in December of last year, and was denied bond pursuant to Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) [hereinafter "Hurtado"]. See Petition, Ex. 1, ECF No. 11-2 (Order of the Immigration Judge in Custody Redetermination Proceedings); Response, Ex. C, ECF No. 13-3 at 2-3 (Bond Memorandum) ("The court ruled that it lacked authority to hear [Petitioner's] request for a bond as the respondent is an applicant for admission and is subject to mandatory detention under . . . 8 U.S.C. § 1225(b)(2)(A). Accordingly, the Court denied Respondent's request to set a bond or change his custody status due to lack of jurisdiction.") (citing Hurtado). This Court vacated Hurtado on March 30, 2026. Over thirty days have passed, and the denial of a bond hearing pursuant to that vacated decision remains in place. In other words, faced with a binding judgment declaring that Petitioner's detention was and continues to be illegal, Federal Respondents have taken no action to cure their prolonged unlawful detention of Petitioner.

Indeed, since the Court's classwide judgment in Jacobo-Ramirez, Federal Respondents

have not been deterred from continuing to detain Class Members like Petitioner without appropriate custody determinations, all while "repeatedly—and increasingly—violating this Court's orders." See, e.g., Jimenez Gomez, Case No. 2:26-cv-00922-RFB-DJA, ECF No. 15 at 2–3 (collecting examples of Federal Respondents violating this Court's explicit orders including by, *inter alia*, removing petitioners from the District of Nevada, failing to release petitioners, ignoring deadlines, and unlawfully imposing release conditions). "By violating this Court's orders, Respondents are undermining their credibility and the rule of law. Their conduct also causes unnecessary trauma and harm to petitioners." Id.

Finally, while ordering a prompt bond hearing at which the government bears the evidentiary burden by clear and convincing evidence may be an appropriate remedy in some cases, here the Court declines to keep Petitioner detained as it would not adequately remedy the constitutional injury he has suffered and it would offer yet another opportunity for the denial of due process. This Court finds that ordering a bond hearing here "would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications" and would fail to adequately remedy the egregious harms suffered by Petitioner. Zheng v. Rokosky, No. 26-CV-01689, 2026 WL 800203, at *11 (D.N.J. Mar. 23, 2026); see also, e.g., E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) ("Although the Government notes that Petitioner may request a bond hearing while detained, such a post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty."); Domingo v. Kaiser, Case No. 25-cv-05893 (RFL), 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner[ ] received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion; that is, his potentially erroneous detention."). The Court thus finds "the typical remedy" for "unlawful executive detention"—immediate release from custody—is appropriate here. Munaf v. Geren, 553 U.S. 674, 693 (2008).

Additionally, the Court finds that it must adopt equitable remedies to ensure that Federal Respondents abide by due process moving forward, in the event of Petitioner's re-detention pursuant to § 1226(a). Cf. Burnett v. Lampert, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts

have a fair amount of flexibility in fashioning specific habeas relief."); U.S. v. Handa, 122 F.3d 690, 691 (9th Cir. 1997) (describing the broad, flexible power federal courts possess to fashion equitable relief in the context of habeas corpus proceedings). Here, the Court finds it appropriate to order that in the event of Petitioner's re-detention under 8 U.S.C. § 1226(a), Federal Respondents must provide Petitioner a pre-deprivation bond hearing wherein the government must prove, by clear and convincing evidence, that detention is appropriate under § 1226(a) and its implementing regulations. See Martinez v. Clark, 124 F.4th 775, 784 (9th Cir. 2024) (reviewing the immigration court's compliance with a district court's order that the government provide an immigration detainee a bond hearing "under the Due Process Clause," which required "the government to show by clear and convincing evidence that the detainee presents a flight risk or a danger to the community at the time of the bond hearing.") (citing Singh v. Holder, 638 F.3d 1196, 1203 (9th Cir. 2011)). While the Court does not take this step lightly, it finds it is necessary because of the egregious violations perpetrated by Federal Respondents heretofore.

Based on the foregoing, **IT IS HEREBY ORDERED** the Amended Petition for Writ of Habeas Corpus (ECF No. 11) is **GRANTED**.

**IT IS FURTHER ORDERED** the Motion for Temporary Restraining Order (ECF No. 16) is **DENIED as moot**.

**IT IS FURTHER ORDERED** Respondents **IMMEDIATELY RELEASE** Petitioner from detention **ON HIS OWN RECOGNIZANCE**, and in any event **BY NO LATER** than **4:00 PM TOMORROW.** This means Respondents are **PROHIBITED** from imposing release conditions that substantially interfere with Petitioner's liberty, such as electronic monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing. Respondents must **INFORM** counsel for Petitioner of the anticipated time and location of Petitioner's release from detention as soon as practicable, and in any event, with **AT LEAST TWO HOURS ADVANCED NOTICE.**

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from invoking 8 C.F.R. § 1003.19(i)(2) to continue Petitioner's detention, as the Court has already found that the regulatory automatic stay is facially unconstitutional and adopts that finding here.

See generally Herrera v. Knight, 798 F. Supp. 3d 1184 (D. Nev. 2025).

**IT IS FURTHER ORDERED** that Respondents are **PERMANENTLY ENJOINED** from detaining Petitioner pursuant to 8 U.S.C. § 1225(b)(2)(A).

**IT IS FURTHER ORDERED** that Respondents may not re-detain Petitioner until after an immigration court hearing is held, with adequate notice, to determine whether detention is appropriate under 8 U.S.C. § 1226(a) and its implementing regulations. At this hearing, the government must bear the burden of establishing that detention is appropriate by clear and convincing evidence.

**IT IS FURTHER ORDERED** that the Parties shall file a joint status report by **May 4, 2026** confirming Petitioner's release and Respondents' compliance with this Order.

The Clerk of Court is kindly instructed to enter judgment accordingly and close this case. The Court retains jurisdiction to enforce its order and judgment. Petitioner may move to reopen this case to enforce the judgment without filing a separate case. The Court also retains jurisdiction to consider Petitioner's request for fees and costs pursuant to 28 U.S.C. § 2412. Petitioner may file an application for fees and costs consistent with the deadlines and requirements set forth in 28 U.S.C. § 2412 and this Court's Local Rules of Practice 54-1 and 54-14.

**DATED:** May 1, 2026.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**